UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROMELLE M HAWKINS, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-198 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

Petitioner Romelle M. Hawkins was convicted of manslaughter by a jury in the 179th District Court of Harris County, Texas. The trial court sentenced him to 23 years imprisonment.

This case is before the Court on Hawkins' petition for a writ of habeas corpus and respondent Lorie Davis' motion for summary judgment. Having carefully considered the petition, the motion, Hawkins' response to the motion, all the arguments and authorities submitted by the parties, and the entire record, the Court is of the opinion that respondent's motion should be granted, and Hawkins' petition should be denied.

### I.  Background

Texas' First Court of Appeals summarized the evidence:

> On April 8, 2012, at around 11:00 p.m., Fallon Kiser went to a bar to meet friends, including her date, Jerold Griffin, and her best friend, Katherine Brownlow–Stewart, the complainant in this case. [Hawkins] was also at the bar. He was Katherine's date.
>
> The group stayed at the bar for a while and then went to a second club. Fallon and Katherine were at the second club when, around 3:00 a.m., Jerold decided that he wanted to leave. Although she wanted to stay at the club, Fallon decided to leave with her date.
>
> Fallon and Jerold rode in the backseat of Jerold's vehicle, a white SUV. Jerold's cousin, Devline Smallwood, was driving, and

another acquaintance, Cedric Jackson, rode in the front passenger seat. During the ride, Fallon and Jerold started to argue. They both had been drinking alcohol that night, and Jerold was drunk.

Fallon got out of the vehicle and began walking along the road, which was in an isolated area. Devline drove the SUV slowly along the road to keep pace with Fallon. The men encouraged Fallon to get back in the vehicle, but she would not comply. Jerold got out of the SUV and began walking with Fallon trying to convince her to get back in the vehicle. The two continued to argue as they walked.

Fallon called Katherine to come pick her up. Katherine arrived shortly after Fallon called her. Katherine was driving her black SUV. [Hawkins] was in the front passenger seat. Fallon got into the backseat of Katherine's vehicle. Katherine and Jerold began arguing, and Jerold walked toward Katherine's SUV in what Fallon later described as an aggressive manner. Fallon saw Katherine reach under her driver's seat to grab a gun, which Fallon knew Katherine kept in her vehicle, but Katherine could not locate the weapon.

As Jerold approached her SUV, Katherine opened her door, hitting Jerold in the face. Katherine then got out of the vehicle and began hitting Jerold. Fallon also got out of the SUV and went to assist Katherine in the physical altercation with Jerold. The two women engaged in a physical fight with Jerold for about 10 to 15 minutes.

The women were winning the fight when Devline approached to break it up. He grabbed Jerold around the waist and tried to pull him away.

At this point, the group was near the driver's side of Katherine's SUV. The driver's side door and window were open. [Hawkins] had never gotten out of Katherine's vehicle and remained seated in the front passenger's seat.

Without warning, the group heard a gunshot. It was [Hawkins]; he had fired a revolver from inside Katherine's SUV. Katherine told Fallon to "get down." The two women ducked down by the vehicle. Jerold and Devline ran away. Cedric, who was further away, hid in the bushes. Ten to fifteen seconds passed. [Hawkins] fired the gun a second time. That shot hit Jerold in the arm as he ran away. Some time passed, and Katherine and Fallon thought it was safe. Katherine stood up and went to get in the driver's side of her vehicle. About five seconds after she stood up, [Hawkins] fired

the gun a third time, shooting Katherine in the head. Katherine fell into Fallon's arms, and they both fell to the ground.

Fallon looked at [Hawkins] and saw him holding the gun. He was shaking. Fallon had heard [Hawkins] say, "What the fuck happened?"

Fallon begged [Hawkins] to help Katherine. Instead, [Hawkins] got into the driver's seat of Katherine's vehicle and drove off. The police and paramedics were called to the scene. However, Katherine died from the gunshot wound to her head.

Fallon told the police that [Hawkins] had shot Katherine and Jerold. Cedric identified [Hawkins] as the person he saw driving away from the scene.

Later that day, [Hawkins] went to a police station to inquire about Katherine. [Hawkins] was taken into custody, and he agreed to be interviewed. During the video-taped interview, [Hawkins] denied being at the scene and firing the gun.

[Hawkins] was indicted for the offense of murder. During trial, Fallon testified in detail to the events occurring before, during, and after the shooting. She stated that [Hawkins] was the person who shot Katherine. Fallon testified that, when Katherine was shot, she had seen [Hawkins] aiming the gun at Katherine's head. She stated that the shots had not been fired rapidly; rather, appreciable time had elapsed between each of the three shots. Fallon testified that Katherine had been standing upright for five seconds trying to get into her vehicle when [Hawkins] shot her.

Cedric also testified. He stated that, although he did not see who had fired the shots, he saw [Hawkins] drive away after the shooting. The investigating police officers testified at trial, and the video-taped interview with [Hawkins] was admitted into evidence. The State further showed, through forensic evidence, that [Hawkins] had tested positive for gun residue on both his hands and his clothing. The defense did not present any evidence.

At the charge conference, the defense requested that the jury be instructed on the lesser-included offenses of manslaughter and criminally negligent homicide. The trial court granted the request to instruct the jury on the lesser-included offense of manslaughter, but denied the request to instruct the jury on the offense of criminally negligent homicide.

> When it returned its verdict, the jury found [Hawkins] guilty of the offense of manslaughter. [Hawkins] pleaded true to an enhancement allegation found in the indictment, indicating that he had previously been convicted of the felony offense of felon in possession of a firearm. The jury assessed [Hawkins]'s punishment at 23 years in prison.

*Hawkins v. State*, 2014 WL 6851614, at *1–2 (Tex. App. Dec. 4, 2014).

The Texas Court of Appeals affirmed Hawkins' conviction, *id.*, and the Texas Court of Criminal Appeals ("TCCA") refused Hawkins' petition for discretionary review, *Hawkins v. State*, No. PD-0084-15 (Tex. Crim. App. Apr. 22, 2015). The TCCA denied Hawkins' application for a writ of habeas corpus on November 25, 2015. Hawkins filed his federal habeas petition on January 22, 2016. Respondent moved for summary judgment on November 1, 2016, and Hawkins responded on December 29, 2016.

## II. The Applicable Legal Standards

### A. The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas relief is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997). Under the AEDPA federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Kitchens v. Johnson*, 190 F.3d 698, 700 (5th Cir. 1999). For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this court may grant relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved

an unreasonable application of, clearly established [Supreme Court precedent]." *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001). Under the "contrary to" clause, this court may afford habeas relief only if "'the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.'" *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)).

The "unreasonable application" standard permits federal habeas relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 406. "In applying this standard, we must decide (1) what was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts." *Hoover v. Johnson*, 193 F.3d 366, 368 (5th Cir. 1999). A federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001), *aff'd,* 286 F.3d 230 (5th Cir. 2002) (en banc), *cert. denied sub nom. Neal v. Epps*, 537 U.S. 1104 (2003). The sole inquiry for a federal court under the 'unreasonable application' prong becomes "whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" *Id.* (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997));

*see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'").

The AEDPA precludes federal habeas relief on factual issues unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The state court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997), *cert. denied*, 522 U.S. 1119 (1998).

B.    Summary Judgment Standard in Habeas Corpus Proceedings

In ordinary civil cases, a district court considering a motion for summary judgment is required to construe the facts of the case in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) (The "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor"). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). This principle is limited, however; Rule 56 applies insofar as it is consistent with established habeas practice and procedure. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (citing Rule 11 of the Rules Governing Section 2254 Cases). Therefore, § 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary summary judgment rule that all disputed facts must be construed in the

light most favorable to the nonmoving party. *See id*. Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" regarding the state court's findings of fact, those findings must be accepted as correct. *See id*. Thus, the Court may not construe the facts in the state petitioner's favor where the prisoner's factual allegations have been adversely resolved by express or implicit findings of the state courts, and the prisoner fails to demonstrate by clear and convincing evidence that the presumption of correctness in 28 U.S.C. § 2254(e)(1) should not apply. *See Marshall v. Lonberger*, 459 U.S. 422, 432 (1983); *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Emery v. Johnson*, 940 F.Supp. 1046, 1051 (S.D. Tex. 1996), *aff'd*, 139 F.3d 191 (5th Cir. 1997).

### III.    Analysis

At the close of evidence in the guilt phase of trial, the trial court instructed the jury on the crimes of murder and the lesser included offense of manslaughter. The court declined to instruct the jury on the lesser included offense of criminally negligent homicide.

In finding that Hawkins was not entitled to a jury instruction on criminally negligent homicide, the Texas Court of Appeals explained that, under Texas law,

> [a] person commits the offense of murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (Vernon 2011). A person commits manslaughter if he recklessly causes the death of another. *See id.* § 19.04 (Vernon 2011). A person commits the offense of criminally negligent homicide if he causes the death of an individual by criminal negligence. *Id.* § 19.05(a) (Vernon 2011).
>
> The essential difference between murder, manslaughter, and criminally negligent homicide is the culpable mental state required to establish each offense. *See Thomas v. State,* 699 S.W.2d 845, 849 (Tex.Crim.App.1985). The Penal Code defines the relevant culpable mental states as follows:

> (a) A person acts intentionally, or with intent, with respect to ... his conduct when it is his conscious objective or desire to ... cause the result.
>
> (b) A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.
>
> (c) A person acts recklessly, or is reckless, with respect to ... the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the ... result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.
>
> (d) A person acts with criminal negligence, or is criminally negligent, with respect to ... the result of his conduct when he ought to be aware of a substantial and unjustifiable risk ... [that] the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(a)-(d) (Vernon 2011).

"The key to criminal negligence is not the actor's being aware of a substantial risk and disregarding it, but rather it is the failure of the actor to perceive the risk at all" created by his conduct. *Montgomery v. State,* 369 S.W.3d 188, 193 (Tex.Crim.App.2012); *Trujillo v. State,* 227 S.W.3d 164, 168 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd) Evidence showing that a defendant did not intend the result does not automatically entitle him to a charge on criminal negligence. *See Trujillo,* 227 S.W.3d at 168. "Rather, the difference between criminally negligent homicide and manslaughter is the culpable mental state of criminal negligence for the former and recklessness for the latter." *Id.* A defendant is not entitled to a charge of criminally negligent homicide if the

> evidence shows that the defendant's awareness is such that he perceived the risk his conduct created. *Id.*

*Hawkins v. State*, 2014 WL 6851614, at *3–4 (Tex. App. Dec. 4, 2014). Hawkins now contends that the denial of his requested jury instruction violated his constitutional rights to have every necessary element of his offense determine by the jury and his right to due process, and that it renders the verdict a miscarriage of justice.

A. <u>Jury Determination</u>

During deliberations, the jury sent a note to the trial judge asking: "Can manslaughter term be reduced?" Clerk's Record ("CR") at 217. Hawkins interprets this note as an indication that the jury wanted to convict him of a lesser offense than manslaughter. Citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000), he argues that the court's refusal to instruct the jury on criminally negligent homicide denied him his right to have every element of his crime determined by the jury beyond a reasonable doubt. This argument is unavailing.

In *Apprendi*, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Hawkins does not identify anything that increased his penalty beyond the statutory maximum: he was convicted of manslaughter and sentenced within the statutory range for that crime.

Moreover, Hawkins does not contend that the jury was improperly instructed on the State's burden of proof as to every element of the offenses charged. The fact that the jury found him guilty of manslaughter demonstrates that the jury determined his guilt beyond a reasonable doubt. The jury's cryptic note (to which the trial court responded: "The court is unclear on what is being asked . . .," CR at 217), appears to ask about the possible sentence, not the charged offense. In any event, the jury reached its verdict, and Hawkins points to nothing suggesting that

his Sixth Amendment right to a jury determination of guilt beyond a reasonable doubt was violated.

B. Due Process

Hawkins next argues that the court's failure to instruct the jury on negligent homicide violated Hawkins' right to due process. The Supreme Court has held that, in capital cases, due process requires giving a lesser included offense instruction when the lesser included offense is supported by the evidence. *See Beck v. Alabama*, 447 U.S. 625, 635, 637 (1980). The Fifth Circuit, however, has expressly declined to extend this rule to non-capital cases. "In a non-capital murder case, the failure to give an instruction on a lesser included offense does not raise a federal constitutional issue." *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988). Thus, Hawkins' due process claim is precluded by binding Fifth Circuit precedent.

C. Miscarriage of Justice

While a fundamental miscarriage of justice may provide grounds for excusing a procedural default, *see, e.g., Sawyer v. Whitley*, 505 U.S. 333, 335 (1992), respondent does not argue that any of Hawkins' claims are procedurally defaulted. Hawkins does not identify anything distinguishing his claim that his verdict is a miscarriage of justice from his general due process claim. To the extent that he intends to argue that he is actually innocent of manslaughter, and guilty only of negligent homicide, he fails to raise a cognizable claim for relief. "Claims of actual innocence. . . have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). This is so because "federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id.*

Because, as noted above, Fifth Circuit precedent precludes a finding that the court's failure to instruct the jury on criminally negligent homicide denied Hawkins due process, he fails to demonstrate any underlying constitutional violation. Therefore, his miscarriage of justice claim fails to state grounds for relief.

## IV. Certificate of Appealability

Hawkins has not requested a certificate of appealability ("COA"), but this Court may determine whether he is entitled to this relief in light of the foregoing rulings. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) ("It is perfectly lawful for district court's [sic] to deny COA *sua sponte*. The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued.") A defendant may obtain a COA either from the district court or an appellate court, but an appellate court will not consider a request for a COA until the district court has denied such a request. *See Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1988); *see also Hill v. Johnson*, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court should continue to review COA requests before the court of appeals does.").

A COA may issue only if the defendant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A defendant "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

This Court has carefully reviewed the record in this case, and the arguments, and authorities put forth by the parties. The Court finds that Hawkins has failed to make a

"substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court concludes that Hawkins is not entitled to a certificate of appealability.

V. **Conclusion**

For the foregoing reasons, respondent's motion for summary judgment is granted, and petitioner Romelle M. Hawkins' petition for a writ of habeas corpus is denied and is dismissed with prejudice.

VI. **Order**

It is ORDERED as follows:

A. Respondent Lorie Davis' motion for summary judgment (Dkt. No. 16) is GRANTED;

B. Petitioner Romelle M. Hawkins' petition for a writ of habeas corpus is DISMISSED WITH PREJUDICE; and

C. No certificate of appealability shall issue.

The Clerk shall notify all parties and provide them with a true copy of this Memorandum and Order.

SIGNED on this 14th day of June, 2017.

Kenneth M. Hoyt
United States District Judge